## Amasa M. Pardee v. James Smith.

*False imprisonment: Certiorari: Objections: Practice in supreme court.* Where a justice's judgment in a suit against a justice of the peace for false imprisonment by the issuing of a warrant against the plaintiff, is brought to the circuit by *certiorari* and there affirmed, only such objections to the validity of the proceedings for the imprisonment, will be considered on error to review the determination of the circuit, as were passed upon in the court below.

*Capias: Civil suit: Irregularities: Jurisdiction: Waiver.* In the case of a *capias* in a civil suit, irregularities or errors, however serious, if not jurisdictional, cannot be attacked collaterally; and such irregularities and errors may be waived by a failure to take advantage of them in time, so as not to be open to objection even in a direct proceeding to review the judgment.

Whether, in an action for false imprisonment, where the proceedings for the arrest complained of were in fact criminal in character, but were treated by both parties as civil, the court would be justified in holding the plaintiff to the same rules as if they were civil proceedings :—*Quaere ?*

*Statute construed: Criminal proceedings: Judgment.* Proceedings under the statute (*Comp L. 1871,* § *1998*), to enforce a penalty for keeping billiard tables, etc., are criminal in character; the judgment provided for, being both a fine and security for good behavior, etc., for a year, is an entirety, and no right to prosecute separately for the fine is prescribed; such a judgment is peculiar to criminal remedies and quite foreign to those of a civil nature.

*Statutes construed: Civil suit: Judgment.* Neither section 5268 nor section 6848 of the Compiled Laws of 1871 warrant the recovery of such a judgment in a civil suit.

*Statutes construed: Justice of the peace: Jurisdiction: Offenses.* Justices of the peace have not jurisdiction to try and determine cases under the statute in question (*Comp. L. 1871,* § *1998*); the statute (*Comp. L. 1871,* § *5525, sub. 8*)

27 MICH.—5.

giving them authority to hear and determine "all other offenses punishable by fine not exceeding one hundred dollars, or punishable by imprisonment in the county jail not exceeding three months, or punishable by both said fine and imprisonment," does not include such an offense.

*Statute construed: Gaming: Complaint: Warrant: Justice of the peace: Examination: Prosecuting attorney.* A complaint and warrant based upon this statute are to be construed as preliminary steps in a criminal procedure looking to an examination, as provided by chapter 259 of the Compiled Laws of 1871, and not to a trial before the justice; and the intervention of the prosecuting attorney is not essential to their validity.

*Complaint construed: Collateral attack: Jurisdiction.* The complaint in question in this case, though not full, direct and precise in its statement of facts, or technically accurate, is held sufficient to give jurisdiction, and therefore not open to objection when attacked collaterally.

An allegation in such complaint that the respondent "has incurred a penalty by the violation" of the statute (naming it by page and section) and that the billiard table was kept in his house, and was resorted to for play with his knowledge and consent, is a statement, by implication, and in argumentative form, that the table was kept in a house "by him actually used or occupied;" and is not open to objection for want of jurisdiction on this ground, in a collateral proceeding.

*Heard January 13.    Decided April 15.*

Error to Jackson Circuit.

*G. T. Gridley,* for plaintiff in error.

*Johnson & Montgomery,* for defendant in error.

GRAVES, J.

The plaintiff in error, Pardee, was a justice of the peace of the township of Spring Arbor, in Jackson county, and on the 26th of June, 1871, one John S. Patterson made to him in writing and on oath the following statement and representation:

"STATE OF MICHIGAN, COUNTY OF JACKSON, ss.

"John S. Patterson being duly sworn upon his oath, makes complaint and says that one James Smith *has incurred a penalty by the violation of section 1588, chapter 44 of the Compiled Laws of the state of Michigan, on page 502;* that the said James Smith on the first day of June, A. D. 1871, and on divers other days and times since that, and is now at this date, at the township of Hanover, in said county of Jackson, engaged in keeping in his house, there situate, a

table for the purpose of playing at billiards for hire, and that persons do resort thereto for the purpose of playing at billiards, with the knowledge and consent of said Smith, and this complaint is made for the purpose of having said Smith arrested for said offense.

　　　　　　　　　(Signed)　　"JOHN S. PATTERSON.

　"Sworn and subscribed to this 26 day of June, A. D. 1871.

　　　　　"By A. M. PARDEE, Justice of the Peace."

　The plaintiff in error thereupon issued a warrant direct- ed to the sheriff or any constable of the county, and recit- ing the complaint, and then proceeding in the following terms: " And, whereas, on examination on oath of the said ———— by me, the said justice of the peace, it appears to me the said ————, that the said *offense has been com- mitted, and there is just cause to suspect the said Smith to have been guilty thereof ;* therefore, in the name of the people of the state of Michigan, you and each of you are hereby commanded *forthwith* to take the said James Smith and bring before me, the said undersigned justice of the peace, *to be dealt with according to law.* Given under my *hand and seal,* at Spring Arbor, in said county, on the 26th day of June, A. D. 1871.

　　　　　(Signed)　"A. M. PARDEE, Justice of the Peace."

　The defendant in error, Smith, was arrested on this warrant, and taken before the plaintiff in error towards night on the 27th of June, and at once informed Pardee that he was ready for trial; but Pardee informed him that it was then late, that the complainant was not there, and that the business could not go on then.

　The case was accordingly then postponed by Pardee, and Smith was left in the custody of the arresting officer. The record fails to disclose all that occurred on this occa- sion, and it does not appear from it whether Smith con- sented to the postponement or not, or whether he made any objection to being left in the care of the officer. There are some indications that Pardee proposed that bail

should be given and that Smith declined, but they are faint and unimportant.

On the 29th of June, Smith appeared, attended by Mr. Snow as his counsel, and another gentleman of the bar appeared and responded for the people.

At this time Smith's counsel objected to the proceedings on the ground that the word "billiard" in the warrant was spelt with one "l" instead of two; and this objection, which was overruled, seems to have been the only one raised by Smith. The way was then deemed open for further proceedings, and without any question on either side as to the propriety or regularity of such a course, a declaration was filed in the name of the people, founded on the law mentioned in the complaint, but in the form of *indebitatus assumpsit*, and alleging a promise by Smith to pay the people one hundred dollars; and to this, Smith pleaded the general issue. Thereupon on his motion the case was adjourned until the 8th of July, and at which time, also on his motion, a jury was called, and the issue on the declaration and plea was tried, and a verdict found against him for eight dollars damages, upon which judgment was entered. None of these proceedings appear to have been appealed from or disturbed.

About two days after this judgment, Smith brought an action against Pardee before another justice, in the form of trespass for false imprisonment, and counted upon his arrest and custody under the before mentioned warrant as his actionable grievance. He recovered twenty-eight dollars damages and his costs. Pardee obtained a review of this judgment in the circuit court by *certiorari*, and the judgment was affirmed. He then sued out this writ of error.

The correctness of the judgment of the court below is admitted to depend upon the validity of two objections brought against the early proceedings in the case against Smith, and it is not contended that the judgment against Pardee can be supported if such objections ought not to prevail.

These objections are: *First*, that Pardee as a justice of the peace acquired no jurisdiction to issue the warrant against Smith, because, as is claimed, the complaint was. insufficient in this: that it did not state that his house where the table was kept, was "used or occupied by him;" and, *second*, that the prosecution was instituted by a private person and not by a public officer.

It will not fail to be observed that throughout the case before Pardee, Smith construed it as a civil and not a criminal proceeding, and shaped his course and defense on that assumption, and that his position in this court rests upon that hypothesis. It is also noticeable that the other side, from the time of the arrest, proceeded conformably to the same idea.

The whole proceedings, from the appearance on the 29th of June, were in form and substance civil.    The validity of the first step is now called in question collaterally; and if that step was one in a civil prosecution, as Smith all along regarded and treated it, and as he still persists. in construing it, and as Pardee, the justice, and the gentleman who appeared for the people, assumed it to be, on and after the appearance on the 29th of June, there would seem to be a decisive reason for holding that the defect in the complaint, if material, is not open to an objection by Smith in this action.    It was, at most, as a showing for civil process, an irregularity or error not going to the jurisdiction. The statute defining the offense and giving the right to sue was expressly named, and it was also declared in round terms in the affidavit, that Smith had incurred the penalty prescribed.    The nature of the offense imputed was not left in doubt, nor was Smith misled by the imperfection of· the affidavit.    The record discloses that in its inception the prosecution had the sanction of the prosecuting attorney, and that it was carried to completion under his authority.    Pursuing the view then taken by Smith and on which he has steadily acted, and in which the other side have acquiesced since the appearance on the 29th of June, that

the prosecution from its beginning was civil and not criminal, the warrant must be regarded as a mere civil *capias* to bring Smith into court; and if marked by irregularities or errors, however serious, but not going to the jurisdiction, it would not only not be exposed to attack in this collateral way, but would, after what occurred, be protected against objection based on such errors or irregularities, even though such objection were made in a direct proceeding to impeach the judgment.

He made no objection before Pardee except that a word was misspelled in the warrant. He procured an adjournment on his own motion. He joined issue upon the merits. He demanded a jury. He went to trial on the merits. He made no attempt, so far as appears, to have the proceedings set aside. If the proceedings were civil the imperfection in the showing for the warrant or *capias* was waived.—*Dempsey v. Paige, 4 E. D. Smith, 218; Swartwout v. Roddis, 5 Hill, 118; Stewart v. Hill, 1 Mich., 265; Falkner v. Beers, 2 Doug., 117; Pixley v. Winchell, 7 Cow., 366; Stewart v. Howard, 15 Barb., 26; Hanson v. Hoitt, 14 N. H., 56; Smith v. Whittier, 9 N. H., 464; Carlisle v. Weston, 21 Pick., 535; Ripley v. Warren, 2 Pick., 592; Wright v. Jeffrey, 5 Cow., 15; Moore v. Stockwell, 6 Barn. & Cress., 76; Rittenour v. McCausland, 5 Blackf., 540; Dewey v. Greene, 4 Denio, 93.*

But the complaint and warrant were criminal and not civil proceedings. And when, on the 29th of June, the parties hereto, and the gentleman who appeared for the people, proceeded as in case of a civil remedy, they misapprehended the nature of the complaint and warrant, and departed therefrom. This departure had the tacit assent of all, and it presents a very anomalous state of things.

The rule is general, that a defendant will not be permitted to avail himself of errors to which he himself is a party, and it is not impossible but that the court in this action would be justified on this and other grounds in holding Smith to the same law in reference to his objections

as though the complaint and warrant had been civil pro-
ceedings, as all concerned treated them as being.

But, as it seems advisable to examine the case in another
light which leads to the same conclusion, it is not needful
to consider this view. The statute (*Comp. L. 1857, § 1588;
Comp. L. 1871, § 1998*), on which the prosecution was based,
enacts that every offender shall forfeit not exceeding one
hundred dollars, "and shall further recognize with sufficient
sureties in such reasonable sum as the court shall direct,
for his good behavior, and especially that he will not be
guilty of any offense against the provisions of this chapter
for the term of one year, then next ensuing." It cannot fail
to be observed that this law creates the offense, and explicitly
prescribes the nature of the judgment, and constitutes the
requirement to find sureties an integral part of the judg-
ment. The offender, on conviction, is not only to be
adjudged to pay a fine, but is to be adjudged also to per-
form a personal act. He must give bail. The judgment to
be given, as described, is to be a unit, an entirety. The
fine, and the requirement to find sureties, are to go together
and make one judgment. No provision is made for separating
these elements and for the entry of judgment for a part
only. As the whole matter is statutory, clear and positive,
we are not at liberty to imply an intention to prescribe a
right to prosecute separately for the fine. The judg-
ment to be given belongs to the remedy, and the
statute creating the offense having marked out the judg-
ment, that judgment is the one appropriated to the case,
and the line or course of proceeding which the law has
established to produce such a judgment, is the line or
course of proceeding also appropriated to the case.—*Rex v.
Robinson, 2 Burrow, 799; Thurston v. Prentiss, 1 Mich.,
193; Lang v. Scott, 1 Blackf., 405; Gedney v. Inhabitants of
Tewksbury, 3 Mass., 307; Smith v. Drew, 5 Mass., 514; Almy
v. Harris, 5 J. R., 175; Fletcher v. State Capital Bank, 37
N. H., 369, 392; Marshall v. Nicholls, 12 E. L. & E., 466.*

This examination is only intended to assist in showing that the legislature designed that the remedy should be in form criminal, and not to establish that a defendant could take advantage of an omission to require him to find sureties in a case otherwise right.     That point is not involved and is not considered.

The law, then, contemplates that, in case of conviction on this statute, the judgment shall be not only for the fine, but that the defendant find sureties.     And it likewise necessarily implies that the proceedings shall be of a form adapted to the end.     Now a judgment of this kind is one peculiar to criminal remedies, and is quite foreign to those of a civil nature.     Indeed, no instance is recollected of such a judgment at common-law in a civil suit.     To authorize it, a statute would be needed.     We must, therefore, suppose the legislature intended that it should be obtained by criminal, and not civil prosecution, in the absence of clear evidence in the statute book to the contrary.     No such evidence has been pointed out by counsel, and none has been discovered by the court.

Neither of the provisions relating to civil prosecutions to which we were referred by counsel, is sufficiently pointed and comprehensive to justify the idea that the legislature meant thereby to confer so unusual a power as that of giving such a judgment in a civil case.

The second subdivision of *section 3672, Comp. L. 1857* (*Comp. L. 1871*, § *5268*), is confined to the case where a *mere penalty* or *forfeiture* is to be adjudged, and does not contemplate one where in addition thereto the defendant is to be adjudged to find sureties.     ·

*Section 5113, ch. 155, Comp. L. 1857* (*Comp. L. 1871*, § *6843*) does not clearly give a civil remedy.     It makes no reference to a case involving a compound judgment, and it expressly limits the jurisdiction to cases where the amount of the penalty or forfeiture does not exceed one hundred dollars, and would, therefore, seem to exclude cases where by the law the offender must do more than pay the fine

and costs. It would seem, then, that the law intended, that a prosecution on this statute should be according to the forms in criminal cases. An inspection of the warrant shows most clearly that it was not framed as civil, but very plainly as criminal process. This appears from the address, the command, and the whole body and structure of the paper.

Was it issued under the law giving to justices of the peace the power to try particular offenses? If it was, it must have been under the eighth subdivision of *section 3924, Comp. L. 1857 (Comp. L. 1871, § 5525)*, as no other portion of the statute has the least application. That clause authorizes a justice of the peace to arrest and try for offenses *punishable by fine* not exceeding one hundred dollars, or by imprisonment in the county jail not over three months, or by both such fine and imprisonment.

Now the judgment prescribed by the statute on which the prosecution against Smith was based, does not fall in with either branch of this definition. It must be admitted that the finding of sureties is no trivial part of what the law exacts on conviction under that statute. The law and common sense must regard that part of the penal provision as the most efficacious, as in general it must be the most onerous. There are many cases where the requirement to find bail for good behavior is the only substantial ingredient of the sentence, and it will hardly do to say that the legislature, in regulating the jurisdiction of a justice to try by the amount and nature of the infliction, meant to include cases requiring a wholly different infliction, and one, too, which they evidently regarded as specially efficacious.

It may, therefore, be considered that a prosecution on the act in question was not meant to be carried on under the law giving justices the power to try; and recurring to the warrant we see that its form indicates that it was not framed upon that law. That act provides that a warrant

27 MICH.—6.

issued under it shall require the officer to bring the accused before the justice issuing the warrant, "*or some other justice of the same county*," to be dealt with according to law. The warrant against Smith did not contain this clause. It would seem, then, that he was not proceeded against under this statute.

On recurring to *Comp. L. 1857, ch. 155* (*Comp. L. 1871, ch. 216*), we find it provided by *Comp. L. 1857, § 5120* (*Comp. L. 1871, § 6850*) that, "In all cases where the penalty or forfeiture shall be one hundred dollars *or more*, such penalty or forfeiture may be recovered by indictment in the proper court of the county."

In *People v. Hart, 1 Mich., 467*, it was held by this court that a penalty of one hundred dollars given for selling liquor without license, was recoverable by indictment under this section, and that the previous section in the same chapter (*Comp. L. 1857, § 5113*), conferring power on justices to entertain civil proceedings, did not exclude the criminal remedy in such a case.

Now, if in the case against Smith a civil prosecution was not appropriate, and one criminal in form was, if the case was not one falling regularly within the class triable by a justice and was not commenced as one of that kind, it must have been a case subject to prosecution by information or indictment, and within the law providing for a preliminary examination. The complaint and warrant should, therefore, be tested by that law. The statute regulating those proceedings is *Comp. L. 1857, ch. 194* (*Comp. L. 1871, ch. 259*) ; and *Comp. L. 1857, § 5979* (*Comp. L. 1871, § 7845*) gives the form of the warrant for arrest.

The warrant against Smith followed this section. The provisions of this chapter declare that whenever *complaint* is made to the magistrate that a criminal offense not cognizable by a justice of the peace has been committed, he shall examine on oath the complainant and any witnesses produced by him, and that if it appear from such examination that a criminal offense not cognizable by a justice

of the peace has been committed, he shall issue a warrant directed to the sheriff or any constable of the county, *reciting the substance of the accusation*, and commanding them forthwith to take the person accused and bring him before such magistrate, to be dealt with according to law. When the accused party is arrested the magistrate is to proceed to examine, and he may adjourn from time to time, as may be necessary, without the consent of the accused.

The accusation and warrant against Smith must be referred to this statute. Their form and nature permit this, and they can hardly be harmonized with other regulations. They were preliminary steps in a criminal procedure looking to an examination, and not to a trial before the justice. The intervention of the prosecuting attorney was not needed to validate a complaint or warrant of arrest under this statute, and the preliminary showing was, at all events, sufficient to give jurisdiction to issue the warrant. Though this showing was not full, not amplified by details and explanations, not direct and precise in the statement of facts, nor technically accurate as an indictment or information, it was sufficient to give jurisdiction. It stated *positively* that he had incurred the penalty given by the statute, and in addition thereto it also alleged that the table was kept in his house and was resorted to for play with his knowledge and consent.

Certainly he could not, upon the theory of his own objections, have incurred the penalty which was thus in writing and on oath positively laid to his charge, unless he had used or occupied the house; and the statement that he *had* incurred such penalty was, therefore, a statement, in argumentative form it is true, but still a statement, that he had used or occupied.

This statement then, by implication or inference, imported the existence of the very fact which the objection assumed to be unproved. The further statement, as it stands in the complaint or showing, that the house was *resorted to with his assent*, tends in the same direction. It there-

fore favored the same inference. However irregular and inartificial this mode of statement, it cannot be claimed to have affected the jurisdiction to issue the warrant. Most clearly it conveyed information in writing and on oath, that a specific offense had been committed, and afforded good ground for belief that further investigation would require Smith to be held. It afforded evidence for the judgment of the justice in a matter upon which it was the duty of the justice to act. The defects, or rather the imperfections, complained of, however irregular, were not jurisdictional.

The objections were not tenable, and therefore the judgments below were erroneous and should be reversed, with the costs of all the courts to the plaintiff in error.

The other Justices concurred.